JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, William Rufus, appeals his conviction from the Cuyahoga County Court of Common Pleas. Finding error in the proceedings below, we reverse his conviction and remand the case for a new trial.
 {¶ 2} Rufus was charged with domestic violence, with four furthermore specifications alleging prior convictions for domestic violence. As charged, it is a third-degree felony. Rufus waived his right to a jury trial and was tried to the bench.
 {¶ 3} At trial, the victim, Lakeisha Rufus, testified that she and Rufus were divorced but still living together on the date of the incident. She testified that Rufus is the father of her eight-month-old daughter, and that she has an eight-year-old son by another man. All four lived together at 1560 East 196th Street in Euclid, Ohio.
 {¶ 4} Lakeisha testified that on the night of the incident, she was bathing their infant daughter when an argument ensued. She went downstairs with the infant, and Rufus followed. Lakeisha testified that she swung at Rufus but missed. She stated that Rufus then hit her. She testified that they began fighting with each other. Rufus hit her in the head and in the stomach. He then picked up a chair and hit her on her side with it. Lakeisha testified that she grabbed a knife, "To stab him with. Because — just to defend myself." She stabbed Rufus in the hand and upper arm.
 {¶ 5} Lakeisha did not call the police. Rufus, however, went next door and called the police. When the police arrived, Rufus explained that Lakeisha had stabbed him and that she *Page 4 
was in their house with the children. Lakeisha was ordered out at gunpoint and placed in handcuffs and put in the back of the zone car.
 {¶ 6} Officer Micky Atchley testified that he arrived on scene, spoke with Rufus, and then apprehended Lakeisha. Officer Atchley then interviewed Rufus and was told that Rufus and Lakeisha had gotten into an argument, that she punched him, that he tried to defend himself, and that she grabbed a knife and stabbed him in the hand and upper arm. Thereafter, Officer Atchley interviewed Lakeisha while Rufus was treated by EMS.
 {¶ 7} Officer Atchley testified that Lakeisha stated that she and Rufus had gotten into an argument and that it had become violent. She told the officer that during the fight, she grabbed a knife to defend herself and ended up stabbing Rufus. The officer stated that Lakeisha was not visibly injured.
 {¶ 8} Officer Atchley testified that he then interviewed Lakeisha's eight-year-old son, who had witnessed the fight. Officer Atchley testified, over objection by defense counsel, that the eight-year-old told the same story as his mother: that Rufus had started the fight and that his mother had grabbed the knife to defend herself. The eight-year-old did not testify.
 {¶ 9} Officer Atchley testified that based on the information obtained, it was determined that Rufus was the primary aggressor, and he was arrested for domestic violence.
 {¶ 10} The trial court found Rufus guilty of domestic violence, a felony of the third degree, and sentenced him to four years in prison. Rufus appeals, advancing eight *Page 5 
assignments of error for our review. His first assignment of error, which is dispositive of the case, states the following:
 {¶ 11} "Defendant was denied his right of confrontation and cross-examination when the court admitted a statement from a non-testifying witness offered through a police officer."
 {¶ 12} The Sixth Amendment to the United States Constitution guarantees that the accused has the right to confront and cross-examine witnesses testifying against him. Pointer v. Texas (1965), 380 U.S. 400,406, 85 S.Ct. 1065, 13 L.Ed. 2d 923. Ohio's Confrontation Clause is located in Section 10, Article I, of the Ohio Constitution.
 {¶ 13} In Crawford v. Washington, the United States Supreme Court held that the proper analysis for determining whether out-of-court statements violate the Confrontation Clause is not whether they are reliable but, rather, whether they are testimonial. (2004), 541 U.S. 36, 61. The Court went on to state that the Confrontation Clause does not apply to nontestimonial hearsay but that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68.
 {¶ 14} Although the Court expressly declined to set forth a comprehensive definition for the term "testimonial," it described three "formulations of this core class of `testimonial' statements," one of which includes statements "`made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Id. at 51-52, quoting the brief of amicus curiae National Association of Criminal *Page 6 
Defense Lawyers. The Court further stated, "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68.
 {¶ 15} Two years after its decision in Crawford, the Court revisited the issue of testimonial statements in the consolidated cases ofDavis v. Washington and Hammon v. Indiana (2006), 547 U.S. 813.Davis involved statements that a domestic-violence victim made to a 911 operator, identifying her assailant and describing his whereabouts immediately after the assault, while Hammon involved statements made to police officers responding to a domestic-violence complaint after the police had secured the scene. Id. at 815-820.
 {¶ 16} In considering whether the statements in these cases were testimonial, the Court distinguished between police interrogations that concern an ongoing emergency and those that relate to past criminal conduct. Id. at 826-830. The Court formulated what is now known as the primary-purpose test. State v. Siler, 116 Ohio St.3d 39, 2007-Ohio-5637. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."Davis, 547 U.S. at 820.
 {¶ 17} Applying that test, the Court determined that the circumstances of the 911 interrogation in Davis objectively indicated its primary purpose was to enable police *Page 7 
assistance to meet an ongoing emergency. Id. at 829. Accordingly, those statements were nontestimonial. Id. In Hammon, however, the Court stated, "Objectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime." Id. at 829-830. Therefore, the Court held that those statements were testimonial. Id.
 {¶ 18} In the case at bar, just as in Hammon, the statements made to the police officer by the eight-year-old child were made after the police had secured the scene. The primary purpose of the interrogation was to establish past events relevant to later prosecution. The police officer testified that the police were trying to determine who was the primary aggressor, and they based their decision on the information obtained. Accordingly, the statements made by the eight-year-old child were testimonial and thus inadmissible because he did not testify.
 {¶ 19} We recognize that in a bench trial, the trial judge acts as the trier-of-fact, and, unless it affirmatively appears to the contrary, this court will presume that the trial court acted impartially and considered only properly admitted evidence. Columbus v. Guthmann (1963),175 Ohio St. 282, paragraph three of the syllabus. However, in this case, when rendering its decision, the judge specifically stated the following:
 "Now, we know this: There was a call to the police. When the police arrived according to the testimony of the police officer, the victim in the case said that the defendant was the primary aggressor. And according to the police officer's testimony, that was corroborated by the eight-year-old witness who was at the scene. That's uncontroverted testimony of the police officer." (Emphasis added.) *Page 8 
 {¶ 20} In addition to this statement by the trial court, the record reveals that the court made repeated references to the child's statement. Consequently, we find that the trial court did consider the improper testimony when it made its decision. Accordingly, we sustain Rufus's first assignment of error.
 {¶ 21} In light of our decision in the first assignment of error, Rufus's remaining assignments of error are rendered moot.
Judgment reversed and case remanded for a new trial.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1